**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

ERIC MAAR and LINDIANE WESS,
individually and on behalf of others
similarly situated,

        Plaintiffs,

vs.                                              Case No.: 2:16-cv-14121-DMM

BEALL'S, INC.,

        Defendant.
_____/

**DEFENDANT BEALL'S, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO CONDITIONALLY CERTIFY ACTION AND TO AUTHORIZE NOTICE**

      Defendant, Beall's, Inc. (hereinafter "Defendant"), pursuant to Local Rule 7.1(c), responds in opposition to the Plaintiffs' Motion to Conditionally Certify Action and to Authorize Notice (ECF No. 35) (the "Motion to Certify"), and submits the following Memorandum of Law.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

      Plaintiffs, Eric Maar and Lindiane Wess ("Plaintiffs"), have brought a claim under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., alleging that Defendant improperly classified them as exempt from overtime compensation during the period that they worked as Area Managers. Plaintiffs now ask the Court to help them stir up additional litigation and locate possible additional plaintiffs by granting conditional certification of a collective action and sending out notice to potential class members.

      But Plaintiffs cannot show that all of the other members of the class they propose are similarly situated to them, much less that there is sufficient interest from those purported class members in joining a collective action to warrant certification. They have only attracted interest from two additional opt-ins, and the rest of their argument for interest in a collective is built on unwarranted speculation. The two plaintiffs and the two opt-ins worked in only four of the seventy-plus Beall's Department Store locations throughout the state, and cannot show that their

1

experiences are representative of potential plaintiffs at other stores.

Furthermore, Plaintiffs have failed to put forth any evidence that they intend (or are even able) to litigate their claims in a manner consistent with their arguments as to why they are similarly situated to the prospective class members. Plaintiffs appear to be using a bait-and-switch tactic in which they advocate for certification based on Defendant's design of a uniformly-applied job description for Area Managers, but once certification is granted, will then litigate the case based on their individual failures to perform the job as designed. Plaintiffs have not demonstrated any intention to attack the overall design of the Area Manager position as having been insufficient to support the claimed exemption as a matter of law.

The Court should therefore exercise its discretion at this juncture by denying Plaintiffs' bid for conditional certification, because certification is not warranted based on the limited record presented by the Plaintiffs.

Although Beall's does not believe that Plaintiffs have met their burden, if the Court were to disagree, the Court should utilize its discretion to limit the scope of the proposed collective. On the evidence that has been presented, the collective should consist, at most, of Area Managers from the few stores at which the named Plaintiffs and the opt-ins performed the job in question.

Indeed, conditional certification and notice on the broad scope that Plaintiffs propose would serve only the interest of amplifying the one-sided attorneys' fees available under the FLSA, but would without doubt make the potential for resolution of Plaintiffs' claims and class-wide settlement more difficult, which defies the purpose of collective action adjudication.

## II.     BACKGROUND

### A.  Procedural Background

Plaintiffs Maar and Wess have brought suit alleging a single count for overtime wages under the FLSA. [ECF No. 1]. Specifically, Plaintiffs claim to have been employees of Defendant who were entitled to overtime under the FLSA. Id. at ¶¶54-55. Defendant maintains that Plaintiffs were properly classified as exempt employees pursuant to the Section 13(a)(1) of the FLSA and 29 CFR Part 541. [See ECF No. 8].

Plaintiffs seek to prosecute their claim as a collective action on behalf of all Area Managers. [ECF No. 1 at ¶24; ECF No. 35]. This Court allowed a two-tiered discovery schedule given the nature of this matter. [ECF No. 18]. Accordingly, and pursuant to their Joint

Scheduling Report [ECF No. 14], the parties have engaged in discovery into the nature of the claims of the individually-named Plaintiffs as well as discovery into whether the claims can be conditionally certified as a collective action. On August 2, 2016 and August 3, 2016, respectively, Jean Saltmarsh and Madia Roberson (the "Opt-In Plaintiffs") filed Consents to join the lawsuit.[1] [ECF Nos. 33 and 34]. To date, they are the only individuals who have opted in to the proposed collective.

### B. Factual Background

Plaintiff Maar was employed as an Area Manager at Defendant's department store in Port St. Lucie, Florida for approximately eight months during the Relevant Time,[2] or from April 5, 2013 through November 30, 2013, when he resigned. [ECF No. 1 at ¶7]; (Maar Dep. at 56:3-8, 56:14-17, 72:22-24). Plaintiff Wess was employed as an Area Manager at Defendant's department store known as "Oak Leaf" in Jacksonville, Florida for just under fourteen months during the Relevant Time, or from April 5, 2013 through May 23, 2014, when the store at which she worked permanently closed. [ECF No. 1 at ¶10]. (Deposition of Lindiane Wess, attached hereto as Exhibit B and referred to herein as "Wess Dep." at 24:2-25, 25:1-8, 102:9-13, 258:23-25).

Area Managers are salaried employees who work throughout Defendant's 72 department stores throughout Florida. (See Deposition of Dan Doyle, attached hereto as Exhibit C and referred to herein as "Doyle Dep." at 24:7-8, 18:18-20, 19:9-11). Area Managers are responsible for overseeing daily operations, merchandising, and customer experience. (See Exhibit 1 to Maar Dep.). They are expected to supervise the sales associates in their departments on a daily basis. Id. They are also expected to actively participate in hiring, in partnership with other

---

[1] Due to the late date on which the Opt-In Plaintiffs filed their Consents, no discovery has yet been conducted into the nature of their individual claims.

[2] Under the FLSA, a two-year statute of limitations applies, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued, per 29 U.S.C. § 255(a). For purposes of this Response, and without conceding that Plaintiffs have shown that a willful violation occurred or waiving any argument or claim that no willful violation occurred, Defendant will refer to the "Relevant Time" as being the three-year period immediately preceding the filing of this lawsuit (or from April 5, 2013 through April 5, 2016). Defendant notes, however, that if it is ultimately found that no willful violation occurred, Plaintiff Maar's claim is barred, because Maar did not work for Defendant within the two-year limitations period. (See Deposition Transcript of Eric Maar, attached hereto as Exhibit A and referred to herein as "Maar Dep." at 56:3-8, 56:14-17.)

managerial employees.  Id.  Further, Area Managers facilitate training regarding merchandising, and teach and direct their subordinates to follow and maintain Defendant's standards for customer service, merchandise presentation, placement, and pricing, as well as Defendant's general policies and procedures.  Id.  Area Managers also continually teach, develop, and empower their direct reports to interpret Defendant's store and brand presentations to improve the customer experience and grow sales.  Id.

Among their many other managerial duties, Area Managers are expected to partner with other managers to identify business opportunities and create programs to achieve results.  Id. They use daily and weekly sales reports to track, analyze, and communicate business results with subordinates and superiors to determine appropriate sales strategies, with the goal of maximizing sales for the success of the store.  Id.  They must pay attention to product performance and communicate any product needs or observations to other members of management.  Id.  Area Managers must maintain an awareness of the competitive landscape in terms of other retailers in the area.  Id.  They are expected to communicate with other managers constantly about store operations, personnel needs, and the direction of the business.  Id.

Defendant has provided testimony about how those aforementioned duties are actually applied in the Area Manager role in at least a large portion of Defendant's stores, based on the personal knowledge and experience of Defendant's Regional Manager of Operations for the southeast region of Defendant's stores.  (See Affidavit of Cindy Leather-Kennedy, attached hereto as Exhibit D and referred to herein as "Kennedy Aff."). Kennedy testifies that the job description accurately reflects the job duties of Area Managers, and that their primary job duty is management. (See Kennedy Aff. at ¶¶4 and 6).

Defendant classifies all Area Managers as exempt employees for purposes of the FLSA while they work as Area Managers, except during the time period in which they are being trained for management, in which they are classified as non-exempt for purposes of the FLSA.  (See Doyle Dep. at 27:4-28).  In deciding to classify Area Managers as exempt, Defendant's considerations included the employees' primary duties, the amount of time they spend managing, the number of people they are responsible for overseeing, the amount of freedom and discretion they have in their managerial duties, and their compensation.  Id. at 27:8-19.  Defendant has consistently followed the letter of the law when reviewing its classification of Area Managers

and maintaining that the position is exempt.  Id. at 30:4-19.

### III.   LEGAL ARGUMENT

#### A.  The conditional certification burden is lenient, but not non-existent.

*Conditional Certification Standard*

The decision to create an opt-in class in FLSA actions remains soundly within the discretion of the district court.  Hipp v. Liberty National Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001).  Before exercising this discretion, the Court must, at minimum, "satisfy itself that there are other employees . . . who desire to "opt-in" and who are "similarly situated" with respect to their job requirements and with regard to their pay provisions."  Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1567–68 (11th Cir. 1991).  The Court's decision at this stage is "usually based only on the pleadings and any affidavits which have been submitted."  Hipp, 252 F.3d at 1218.

While the standard is thus lenient, owing to the minimal evidence before the Court,  "it is not invisible."  Cohen v. Allied Steel Bldgs., Inc., 554 F. Supp. 2d 1331, 1334 (S.D. Fla. 2008) (quoting Brooks v. A Rainaldi Plumbing, Inc., 2006 WL 3544737, *2 (M.D. Fla. 2007)); see also Hipp, 252 F.3d at 1218.  A plaintiff must meet his or her burden "by making substantial allegations of class-wide [wrongful activity], that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary."  Hipp, 252 F.3d at 1219 (citing Grayson v. K Mart Corp., 79 F.3d 1086, 1095 (11th Cir. 1996)).

Plaintiffs bears the additional burden of demonstrating a reasonable basis for their allegations that other individuals exist who wish to join the broad class proposed.  See  Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir. 1983).  "A plaintiff's or counsel's belief in the existence of other employees who may desire to opt in and unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify certification of a collective action and notice to a potential class."  White v. Kcpar, Inc., No. 605CV1317ORL22DAB, 2006 WL 1722348, at *3 (M.D. Fla. June 20, 2006) (citing Mackenzie v. Kindred Hosps. East, L.L.C., 276 F. Supp. 2d 1211, 1220 (M.D. Fla.2003) (internal citations and quotations omitted).

*Notice Standard*

If conditional certification is granted, and where appropriate, district courts have

5

discretion to authorize notice to potential class members. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989); see also Hipp, 252 F.3d at 1219 ("The power to authorize notice must, however, be exercised with discretion and only in appropriate cases.") (citing Haynes, 696 F.2d at 887). But it should be noted, ". . . for cases where there are only a few employees with claims, the permissive joinder procedure is used so that the Court can exercise jurisdiction over the opt-in claim to adopt any settlement agreement, if the case is settled early." White, 2006 WL 1722348, at *3. Certification "is not appropriate to determine *whether* there are others who desire to join the lawsuit." Id. (emphasis added). Instead, "a showing that others desire to opt in is required before certification and notice will be authorized by the court." Rodgers v. CVS Pharmacy, Inc., No. 8:05-CV770T-27MSS, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2006). Where a plaintiff fails to meet the burden, conditional certification and notice should be denied "to avoid the 'stirring up' of litigation through unwarranted solicitation." White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002) (quoting Brooks v. BellSouth Telecomm., Inc., 164 F.R.D. 561, 567 (N.D. Ala. 1995)).

### B. Plaintiffs' evidence does not demonstrate sufficient interest in a collective.

In support of their Motion to Certify, Plaintiff Wess, the Opt-In Plaintiffs, and two additional former Area Managers who have not consented to join this suit, submitted Declarations.[3] [ECF Nos. 36-4, 36-5, 38-1, 38-2, 38-3]. Plaintiffs contend that the Declarations, the Consents, the testimony of Plaintiff Maar, and evidence purporting to suggest common policies of Defendant, cumulatively demonstrate that other Area Managers will join this lawsuit if provided notice from the Court. [ECF No. 35 at p. 16].

However, Plaintiffs' evidence is neither as substantial nor as persuasive as they wish the Court to believe. In fact, the total number of participating plaintiffs in this case (two named Plaintiffs and two Opt-Ins) is the same total number as in Hawkins v. Beall's, Inc., et al., No. 10-14225-CIV-GRAHAM/LYNCH, which was disposed of in this jurisdiction several years ago, and in which conditional collective certification was denied. In that proceeding, there were a total of four plaintiffs—one named plaintiff and three opt-ins. Judge Graham denied the plaintiffs' bid for conditional certification early in the litigation, because "the record . . . reflect[ed] that that the opt-in Plaintiffs [. . . ] all filed very similar declarations with conclusory

---

[3] Notably, Plaintiff Maar did not submit a Declaration.

assertions that they anticipate and/or believe that other employees will come forward." See Hawkins v. Beall's, Inc., et al., No. 10-14225 (S.D. Fla. Nov. 16, 2010) at Dkt. 21.  Citing all of the relevant case law concerning the standard for collective certification, but noting the wide discretion granted to the district court and the plaintiff's burden to provide evidence about whether there are in fact similarly-situated persons who desire to opt-in, Judge Graham denied conditional certification and authorization of notice.[4]  Id.

The Hawkins case should be instructive here – not for the proposition Plaintiffs contend (that somehow Hawkins and the present suit demonstrate a "continued interest" from Area Managers in attempting to challenge the exemption of Defendant's Area Manager position [see ECF No. 35 at FN 30]) – but because, if anything, the total number of plaintiffs in the two lawsuits combined demonstrate a profound *lack* of interest amongst Area Managers—over the span of six years—in bringing FLSA claims to challenge the Area Manager exemption.  If anything, this case proves that Hawkins was not a fluke.  Despite the passage of six additional years, Plaintiffs' counsel still cannot find more than four plaintiffs willing to opt in to a collective action challenging Defendant's treatment of Area Managers as exempt employees.[5]

Just as the Hawkins plaintiffs did, Plaintiffs and Opt-In Plaintiffs here have put forth similarly inadequate and conclusory testimony.[6]  And the submission of one additional Declaration in this case does not help the cause or tip the scales.  As shown below, Plaintiffs' Declarations and testimony largely rely on the sort of "speculative, vague, and conclusory allegations" about the interest of others in joining suit for the purposes of justifying a collective that have not carried the day in this jurisdiction.  See Manzi v. Hartman & Tyner, Inc., No. 11–cv–60426, 2011 WL 2672343 (S.D. Fla. July 8, 2011); see also Webber v. Coast Dental, P.A., No. 8:12-CV-1505-T-33AEP, 2013 WL 935772, at *2 (M.D. Fla. Mar. 11, 2013) (denying conditional certification where only four individuals had joined, and their affidavits represented

---

[4] Significantly, the Hawkins case was brought by the Shavitz Law Group—one of the firms that represents Plaintiffs in this case.

[5] Plaintiffs try to distinguish Hawkins by pointing out that it sought a nationwide collective rather than merely a statewide one.  This is an irrelevant distinction, because Defendant has never operated any of its department stores outside of the state of Florida.

[6] While Defendant acknowledges that Plaintiffs at least heeded Judge Graham's criticism that none of the declarations in the Hawkins case identified potential plaintiffs by name or location, the evidence of that here is still meaningless since the testimony about whether the declarants have any knowledge about whether such persons sincerely desire to join this action is lacking.

7

only that there were possibly others interested in joining the litigation if they received notice and that some others feared joining because they were still employed by the defendant at the time). "Federal courts routinely decline to certify collective actions when the plaintiff's assertions are conclusory or lack evidentiary foundation." Palacios v. Boehringer Ingelheim Pharm., Inc., No. 10-22398-CIV-UU, 2011 WL 6794438, at *5 (S.D. Fla. Apr. 19, 2011).

To understand why Plaintiffs' evidence falls short, it is helpful to review each witness' testimony:

### *Plaintiff Wess' Testimony*

Plaintiff Wess unequivocally testified at her deposition that she had spoken to only one former employee of Defendant (ironically, Declarant Evangeline Salgado (see ECF No. 38-1)) about this lawsuit. (Wess Dep. at 259:21-261:15). When asked about her verified answer to an interrogatory requesting identification of any individuals of whom she was aware and who may want to join this action, Wess testified that she did not even know Plaintiff Maar (in contradiction to her verified answer to the interrogatory). Id. at 266:15-24. Wess further testified unequivocally that she did not know Mary Hawkins, Martina Guzman, Gail Kreyeski, Sylvia Oziah, or [Opt-In Plaintiff] Jeannie Saltmarsh (other individuals identified in Wess' answer to the aforementioned interrogatory, and, notably, several of the plaintiffs in Hawkins whose claims are now barred). Id. at 268:17-269:2. In fact, Wess admitted under oath that she did not have *any* personal knowledge about whether any of those individuals wanted to join this suit, and *did not know what job duties they performed*. Id. at 269:3-270:3 (emphasis added).

Wess' Declaration [ECF No. 38-3], which was electronically signed and submitted after her deposition had been taken, seems to be a weak attempt to compensate for or counteract the weight of the previously-provided testimony. But it falls short. Wess declares merely that she knew, through "observations[,]" that other AMs worked more than 40 hours per week. [ECF No. 38-3 at ¶ 2]. Based on this, she "anticipate[s]" that other AMs such as David Vega and Angie Salgado "would likely come forward with claims for overtime compensation" if they were "made aware of [the] right" and "provided assurances by the Court" that employers could not retaliate against them. Id. at 3. Although Evangeline Salgado has filed a Declaration with the Court, she has not submitted an opt-in notice. David Vega has not been heard from.

Wess' Declaration mentions nothing about her knowledge of the job duties of Area Managers in other stores or what her opportunities were to gain that knowledge. Nor does Wess'

8

Declaration provide any other basis – aside from her personal observation about Area Managers working more than 40 hours per week – to demonstrate that she is similarly situated to other Area Managers who desire to join the collective.  An observation and belief are simply not enough.  See, e.g., Rodgers v. CVS Pharmacy, Inc., No. 8:05-CV770T-27MSS, 2006 WL 752831, at *4 (M.D. Fla. Mar. 23, 2006) (declarants' averments that they believed other employees would opt in were speculative, vague, and conclusory); see also Wombles v. Title Max of Ala., Inc., 2005 WL 3312670, *3 (M.D. Ala. Dec.7, 2005) (two consents and five nearly identical affidavits by plaintiffs indicating that they believed others desired to join the lawsuit were insufficient to establish that others desired to opt in).

It is telling that Wess does not report (even on a hearsay basis) actually **hearing** any other Area Manager express an interest in joining the lawsuit.  Instead she provides the Court only the thinnest of reeds to cling to:  her "anticipation" that other Area Managers might wish to join.  It goes without saying that "anticipation" is just another word for speculation.

In sum, Wess' testimony does not demonstrate that she is similarly situated to others in the broad prospective class, nor does it do anything to aid Plaintiffs in meeting their burden of showing sufficient interest in a collective.

### *Plaintiff Maar's Testimony*

Plaintiff Maar's testimony is equally unconvincing in support of Plaintiffs' argument that there is sufficient interest to certify a collective here.  Plaintiff Maar testified that he contacted four other Area Managers via Facebook to tell them that he received a letter or email from Plaintiffs' counsel about a "pending class action against Beall's for unpaid overtime that was due to area managers."  (Maar Dep. at 235:24-238:21).  Plaintiff Maar asked these four individuals if they wanted to join the lawsuit as well.  Id. at 238:22-239:1.  Maar testified that all four initially responded; however, two indicated they wanted more information after the initial communication and two did not respond further to Maar.  Id. at 273:10-11, 242:13-244:3.  He identified the four individuals as Ginny Bardi, Marylynn Bozenbury, Trish Cooper, and Jeannie Saltmarsh.  Id. at 235:19-273:6.

Out of those four individuals, Maar testified that he did not have any personal knowledge as of the date of his deposition about whether three of the individuals he contacted were interested in joining the lawsuit.  Id. at 243:9-244:3.  This is consistent with the evidence before

9

the Court, as only Saltmarsh has files an opt in notice. [ECF No. 36-4]. Although Cooper provided a Declaration [ECF No. 38-2], she has not chosen to opt in. Meanwhile, Plaintiffs have not submitted any evidence that Bardi or Bozenbury want anything to do with this lawsuit. Thus, with the exception of Saltmarsh, whose opt-in notice is already before the Court, Maar must be taken at face value when he testified that he had no personal knowledge (as of the date of his deposition) of *anyone* else who intends to join this lawsuit if it is certified as a collective action. Id. at 244: 4-15 (emphasis added).

As with Wess, Maar's testimony does little to support Plaintiffs' burden or showing sufficient interest in a collective, and actually cuts against any argument that Maar is similarly-situated to the proposed collective.

*The Opt-Ins' Testimony*

The two Opt-In Plaintiffs, Saltmarsh and Roberson, also filed Declarations. [ECF Nos. 36-4 and 36-5]. Those Declarations contain minimal variation in format and substance. Like Plaintiff Wess, both the Opt-In Plaintiffs declare that they have knowledge that certain other AMs performed the same or similar primary duties, based on their "observations" and "conversations" with those AMs. [See ECF No. 36-4 at ¶10 and ECF No. 36-5 at ¶¶14-17].

Incredibly though, based only on these observations and conversations, Opt-In Plaintiff Roberson testifies that "[a]ll AMs performed the same or similar primary duties." [ECF No. 36-5 at ¶14]. Missing from this Declaration is any explanation as to how Roberson has personal knowledge of the duties performed by Area Managers outside her own store.

Roberson suggests that an employee named Samantha Smith, who worked in the same store as her, would likely opt in. [ECF No. 36-5 at ¶17]. Roberson speculates that Smith, who still works for Beall's, would likely participate if given notice, but is somehow being deterred due to a fear of retaliation. Id. Yet Roberson also says that Smith had previously complained to Beall's Human Resources about her compensation.[7] Id. If Roberson was in fact willing to complain to Human Resources about her pay, it is hard to see how she would be deterred by a fear of retaliation, especially since any complaint she may already have raised did not lead to her termination. And again, this supposed fear of retaliation has merely been conjured up out of thin

---

[7] Defendant does not concede that Smith has made any such complaint, as it has not yet deposed Smith to determine what she supposedly complained about.

10

air by the declarant – there is no actual evidence, even of the hearsay variety, that Smith is concerned about retaliation at all.

Opt-In Plaintiff Saltmarsh suggests that Victoria Diaz might join the lawsuit. [ECF No. 36-4 at ¶13]. But her basis for making this suggestion is merely the fact that Diaz worked the same hours that she did. Id. at ¶11. She does not even have any hearsay evidence to report that would suggest that Diaz actually has interest in joining the lawsuit. Instead, much like Wess and Roberson, she simply resorts to her power of anticipation to "anticipate" that if other Area Managers received notice of the suit and "assurances" from the Court about anti-retaliation laws, others would "come forward with claims for overtime compensation due." [ECF No. 36-4 at ¶13 and ECF No. 36-5 at ¶17].

On balance, the Opt-In Plaintiffs' speculative and conclusory allegations should not be considered, because they provide no evidentiary basis for the Court to conclude there is additional interest from Area Managers in forming a collective.

### *The Declarants' Testimony*

Likewise, the Declarations of the individuals who have inexplicably not opted in are equally unpersuasive and not credible. [ECF Nos. 38-1 and 38-2]. Even more so than with the Opt-In Plaintiffs, the Salgado and Cooper Declarations are very nearly cut-and-paste jobs.

Declarant Salgado, who apparently worked in the same store as Plaintiff Wess for a period, boldly states that based on her "observations and conversations with other AMs," whose names she does not identify, she "*know[s]* that all AMs spent the majority of their time performing the same [allegedly nonexempt] duties" that she allegedly performed. [ECF No. 38-1 at ¶ 14] (emphasis added). She also "anticipate[s]" that other Area Managers who she worked "alongside" – namely David Vega and Valerie Hester – would bring claims for overtime compensation if they were made aware of the "right to receive overtime pay and provided assurances by the Court" about unlawful employer retaliation. [ECF No. 38-1 at ¶¶15-17].

Based on her declaration, it can be presumed that Salgado is aware of her rights to receive overtime pay and her right to be protected from retaliation. So why has she not opted in? As in the other Declarations, although she speculates about what Vega and Hester might do, she does not report having any actual conversations with them about their desire to join the collective. Nor is her Declaration sufficient to establish that Hester worked for Beall's as an

Area Manager during the relevant period, which would be a prerequisite to Hester joining the collective.[8]

Declarant Cooper, who apparently worked in the same store as Plaintiff Maar for a period, makes identical assertions, but does not even take the time or trouble to identify specific Area Managers who would be interested in joining the collective. [ECF No. 38-2 at ¶¶13-16]. See also Palacios, WL 6794438, at *5 ("Assertions based on "beliefs" and "conversations" are conclusory and provide no meaningful details, thus they fall short of the "substantial" and "detailed" allegations necessary to satisfy the "similarly situated" element."). Because these Declarations lack the substantial and detailed allegations necessary at this juncture, they are not worthy of evidentiary consideration.

In sum, Plaintiffs' insufficient evidence of a willingness and desire by others to form a collective should defeat the bid for conditional certification. See White, 2006 WL 1722348 at *3 (denying a motion to permit court-supervised notice of opt-in rights where plaintiff did not show with specificity that the putative class warranted collective status, and instead simply accepting the consents filed by two individuals and adding the individuals as named plaintiffs); see also Rodgers, 2006 WL 752831, *5 (declarations of the plaintiff and his two coworkers who were opt-ins, along with irrelevant documents from the Department of Labor and newspaper articles criticizing the defendant generally, were insufficient evidence that there were other employees who desired to opt in to lawsuit). All of the names bandied about by Plaintiffs and Declarants come from a small group of stores, and it is clear that many of those individuals have been approached by Plaintiffs to join but have chosen not to do so. The Declarations submitted by Plaintiffs fail to offer even hearsay testimony that others wish to join the collective. Instead they resort to mere speculation, which is given a fig leaf of a disguise by being couched as the "anticipation" of the Declarants. But the declarants' "anticipation" that others wish to join is merely their own opinion, and such opinions have been held to be insufficient. Louis-Charles v. Sun-Sentinel Co., No. 07-80621-CIV, 2008 WL 708778, at *2 (S.D. Fla. Mar. 14, 2008).

Plaintiffs' attempt to excuse the deficiencies of their presentation by conjuring up a hypothetical fear of retaliation cannot save their argument. Neither Plaintiffs nor any of the Declarants can establish that any Area Managers have actually been prevented from joining this

---

[8] The evidence will show that Hester has not worked as an Area Manager since August 2010.

suit by a fear of retaliation; instead they offer only mere speculation that AMs might be afraid (which they suggest would somehow be ameliorated by the Court informing AMs of the non-retaliation provisions that the FLSA already states). Plaintiffs fail to acknowledge that Beall's already explicitly discloses to its managerial employees (and requires that they acknowledge) that Beall's prohibits retaliation against any employees who bring forward in good faith questions or concerns about their compensation. (See Exempt Status of Salaried Employees Acknowledgements executed by Plaintiffs Maar and Wess, attached hereto as Exhibits E and F.) In fact, Roberson's Declaration suggests that Stephanie Smith has already availed herself of this protection. [ECF No. 36-5 at ¶17]. In the absence of any real evidence of fear or actual retaliation, Plaintiffs cannot rely on this mere speculation as evidence that other AMs would actually join the proposed collective.

In essence, other than the four persons who have joined this suit already, Plaintiffs' evidence that other similarly-situated employees would be interested in joining a collective action rests entirely on two very shaky pillars: Plaintiffs' ability to divine the level of others' interest in joining this action by looking at them from afar and "anticipating" what they might want to do, and Plaintiffs' hypothesis that if no one wants to join them, the process must be rigged, presumably due to a participation-suppressing fear of retaliation. The problem with these arguments is that they consist of nothing more than rank speculation.

Plaintiffs have not met their burden of demonstrating a reasonable basis for the assertion that other individuals exist who wish to join the broad class proposed. As the White court cautioned, the mere "belief" and "unsupported expectation" that individuals desiring to opt exist and will subsequently come forward is insufficient to justify certification of a collective action and notice to a potential class. See White, 2006 WL 1722348, at *3.

### C. Plaintiffs cannot show they are similarly situated, because Plaintiffs did not perform the job as it was designed.

Plaintiffs argue that the Court can determine that they are similarly-situated to others in the proposed class merely because Defendant applied a uniform job description and treated Area Managers uniformly. Plaintiffs contend that this uniformity means that satisfying the similarly-situated test should be easy.

What Plaintiffs fail to acknowledge, though, is that certification on this basis should only be easy for plaintiffs who actually intend to attack the classification of the job as a whole. And

even then, it should require more than merely evidence of a common job description. If a uniform job description by itself was sufficient, every multi-unit business in America would be subject to automatic certification of a company-wide collective action based solely on allegations from a single employee that he or she had been misclassified. But more than that is required: instead the plaintiffs must show how that uniform job description violated the law. See Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 476-77 (2010).

Here Defendant has submitted evidence—which is uncontroverted at this point—indicating that it designed the Area Manager position to be an exempt position, in that the primary duties of the job (e.g., the "main" or "most important" duties, consistent with 29 C.F.R § 541.700) all involve the management of the store and those employees who report to the Area Managers. To the extent that the evidence shows that Defendant treats all Area Managers as exempt, the testimony from Defendant is clear that it did so based on the expectation that all Area Managers would perform the job as it was designed to be performed. [See ECF No. 36-1 at 45:14-23].

Moreover, Defendant puts forth evidence that supports the reasonableness of its expectation. The Regional Manager of Operations for southeast Florida, Cindy Kennedy, testified that based on her experience working with Area Managers throughout Defendant's department stores in southeast Florida, Area Managers do perform the job as it is described in the job description. (See Kennedy Aff. at ¶¶4-5). Likewise, Defendant has submitted the affidavit of a former Area Manager who confirms that she performed the primary duties identified in the job description. (See Affidavit of CariAnn Newby, attached hereto as Exhibit G).

To the extent that Plaintiffs are attempting to rely on a uniform job description as evidence of a common policy that violates the FLSA, they have failed to explain how an Area Manager job description that overwhelmingly consists of management duties can be relied upon as evidence that Area Managers throughout Defendant's stores instead spent all of their time performing non-management tasks. And if Plaintiffs intended to argue that the tasks listed in the job description are in fact non-exempt, they have done an exceedingly poor job of it.

To date, Plaintiffs have given no indication that they can or will attack the character of the Area Manager position itself as fundamentally exempt. Instead, their focus has been on the amount of time they spent performing non-exempt duties in their own stores. The crux of

Plaintiffs' argument is that **they personally** spent the majority of their time performing what they consider non-exempt duties (ignoring, for the time being, any analysis of "primary duty" and "concurrent duties" as those phrases are defined by the regulations implementing the FLSA). [ECF No. 1 at ¶¶37-30 and ECF No. 35 at pp. 6-8].

But saying that "I didn't do the job that way" is much different than saying "the job itself is non-exempt." And to show that other Area Managers also "didn't do the job that way" because they spent an overwhelming amount of time performing non-management duties, Plaintiffs must do far more than merely submit evidence of a common job description that in fact required the performance of exempt duties. Here again, though, the Declarations submitted by Plaintiffs fall far short of showing that others throughout the system "didn't do the job that way." [See ECF Nos. 36-4 at ¶¶3-6; 36-5 at ¶¶3-10, 38-1 at ¶¶3-10, and 38-2 at ¶¶3-9].

Plaintiffs have acknowledged significant limitations on their knowledge of whether others in the system performed the job the same way that they did. For example, when Plaintiff Maar was asked whether he knew whether other Area Managers had the responsibilities listed on the job description, he responded "I really can't speak for them." (Maar Dep. at 226:22-25). After an objection and a follow-up question, Maar stated as follows, equally unconvincingly:

> A: Okay. Well, speaking with them over the years and getting similar circumstances with their areas, with the store, I would say there are similarities between my answers and what I'm *assuming* theirs would be.
> Q: But you don't know whether they would say if they did these things.
> A: I can't speak for them.

Id. at 227:1-16 (emphasis added).

As to his own supervisory responsibilities, though, Plaintiff Maar was adamant that he simply did not perform the role of a supervisor as he understood the term:

> Q: Is it your position that you had no responsibility for supervising your department?
> A: To an extent.
> Q: Is it your theory that the only people who supervised employees in that store were the store manager, the merchandise manager and the operations managers?
> A: And the visual manager.
> [Objection to form]
> Q: And the visual manager.
> And you didn't do any supervising and you didn't have a primary duty of management? That's your theory?
> [Objection to form]
> A: If people had a question for me and it related to a schedule change or if they

needed an override, I would help them out with that.
Id. at 162:18-163:10).

It would be unfair and a waste of resources to grant Plaintiffs the right to pursue a collective on the scale they propose under the auspice of challenging the classification generally, when their evidence and arguments actually contend only that it was their own *deviation* from the job description that entitles them to relief.

At best, the Declarations show that a few other Area Managers in the few stores in question may also have performed a significant amount of non-exempt tasks. But because those individuals could also have been performing the exempt tasks set out in the job description even while performing some nonexempt tasks (this is the whole concept of "concurrent duties" that is studiously ignored by Plaintiffs' motion), even these Declarations are not enough to rule out the possibility that these other Area Managers still performed exempt duties, or even that those exempt duties were the most important part of their jobs.

Simply put, the limited evidence of a few Plaintiffs at a few stores failing to perform the job as it was designed cannot be equated to evidence of a class-wide problem necessitating certification of a state-wide collective action. See Lovett v. SJAC Fulton Ind I, LLC, No. 1:14-CV-983-WSD, 2015 WL 3889719 (N.D. Ga. June 23, 2015), reconsideration denied, No. 1:14-CV-983-WSD, 2016 WL 740281 (N.D. Ga. Feb. 24, 2016) (observing that although the plaintiff and the declarant may be similarly situated to each other, there was no evidence to support that they were similarly situated to the class they sought to represent). And it is proper for the Court to "examin[e] the legal backdrop and type of evidence required to prove whether *any* employee is exempt or not." Palacios 2011 WL 6794438, at *6 (emphasis in original).

Before this Court can conditionally certify the collective, it must be satisfied not just that the named plaintiffs are similarly situated to each other and not just that the managerial tasks identified in the job description are common to all Area Managers, but that all Area Managers actually primarily performed the non-managerial duties that Plaintiffs claimed they performed. See Lovett, 2015 WL 3889719 at *11-*14; see also Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1273 (M.D. Ala. 2004) (". . . the mere fact that [the plaintiffs] have identified managerial tasks as being in common does not establish that the Plaintiffs are similarly situated for purposes of the alleged FLSA violation, which hinges on an allegation of the performance of non-managerial duties."). As has previously been explained in this district, "[if]f the ultimate issue to

be determined is whether the Defendant properly classified each employee as exempt under the FLSA, the "similarly situated" inquiry must include an analysis of the nature of each putative plaintiff's job duties." Palacios, 2011 WL 6794438, at *6.

Because Plaintiffs have presented such a limited scope of evidence, and because the limitations on their knowledge of what duties were performed by AMs in other stores are so apparent, there is simply no way for the Court to conclude that AMs throughout Beall's system "didn't do the job that way." See, e.g., Lovett, 2015 WL 3889719 at *11-*14; Palacios, 2011 WL 6794438, at *6 (denying conditional certification and refuting plaintiff's argument that the court was undertaking a merits-based inquiry). Given the limitations of this evidence, the Court should deny certification.

> **D. Even if the Court finds Plaintiffs' evidence is sufficient, the Court should limit the class so that it is consistent with the evidence Plaintiffs have provided, which is simply not extensive enough to justify a significant collective.**

If Plaintiffs' theory is that they did not perform the job as it is set out in the job description, the class should be limited to those individuals or groups of individuals where there is such evidence. At most, Plaintiffs may have shown that they are similarly situated to the Opt-Ins and Declarants, who all have some connection to each other in terms of the stores in which they worked, and who represent employees from a finite set of Defendant's stores.

The Court may be inclined to give some consideration to the possibility of declaring a collective action limited to those stores. Under this approach, the collective would consist only of Area Managers at the stores where the Plaintiffs and Opt-In Plaintiffs claim to have worked during the Relevant Time. Holding otherwise would only "stir up litigation through unwarranted solicitation." Brooks, 164 F.R.D. 561, 567 (N.D. Ala. 1995), aff'd sub nom. Brooks v. Bellsouth, 114 F.3d 1202 (11th Cir. 1997). See also White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002) (denying conditional certification where the court was "not satisfied that conditionally certifying a nationwide class would partake of the economy of scale envisioned by the FLSA collective action procedure.")

But even this approach would appear to be overkill. Since the Declarations make clear that declarants have already discussed the prospects for the case with their former coworkers, yet have not succeeded in convincing others to join, it is unclear what good would be achieved by giving formal notice to this same group. To date, Declarants Cooper and Salgado have not

joined the lawsuit despite their awareness of it. And even though Saltmarsh and Roberson have indicated interest, their interest in joining can be satisfied by the simple expedient of an Amended Complaint naming them as Plaintiffs. See, e.g., Whalen v. U.S., 85 Fed. Cl. 380, 383-84, n.2 (2009) (noting that in the absence of certification, a putative opt-in can simply move to join via Rule 20).

Thus, even if consideration is given to granting a limited scope of certification, prudential concerns would outweigh the benefits gained by certification. This case has already been sidetracked long enough with Plaintiffs' attempts to gain certification. Denying certification would unstick the proceedings and force the parties to either resolve the current Plaintiffs' substantive concerns or ready the case for summary judgment motions or trial, as appropriate.

### E. If certification is granted, Plaintiffs' proposed Notice must be amended.

If a collective is conditionally certified, Defendant opposes the form and substance of Plaintiffs' proposed Court-Authorized Notice. [ECF No. 38.4]. The Notice must accurately reflect the parties' respective positions in this lawsuit; moreover, the Notice must accurately state the law. The proposed Notice does not meet that standard. If the Court is inclined to grant certification, Defendant requests that the parties be directed to work together to reach a mutually-acceptable notice, with the option to present any concerns that cannot be mutually resolved to the court following that process.

### IV. CONCLUSION

Plaintiffs propose conditional certification of a broad collective without having shown sufficient interest from the putative class in the form of substantive evidence. Further, the limited evidence Plaintiffs have put forth actually thwarts their efforts, because, in the face of Defendant's uncontroverted evidence, it indicates Plaintiffs cannot show they are similarly situated to the proposed collective. As a result, conditional certification and Court-supervised notice is inappropriate, and the Court should use its discretion to avoid the unnecessary stirring up of litigation that would ensue if Plaintiffs' motion is granted. Notwithstanding, if the Court determines certification of some collective is appropriate here, the scope of the collective should be based upon the scope of the evidence Plaintiffs have provided.

WHEREFORE, Defendant respectfully requests that the Court deny the Motion to Certify and grant all additional relief that is just and proper.

Respectfully submitted this 19th day of August, 2016.

/s/ Kevin D. Johnson
Kevin D. Johnson
Florida Bar No.: 0013749
Bridget E. McNamee
Florida Bar No.: 0096460
Thompson, Sizemore, Gonzalez, & Hearing, P.A.
201 N. Franklin St., Suite 1600
Tampa, FL 33602
Tel: 813-273-0050
Fax: 813-273-0072
Email: kjohnson@tsghlaw.com
bmcnamee@tsghlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 19th day of August, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Kevin D. Johnson
Attorney