UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 16-cv-14121-MIDDLEBROOKS/LYNCH

ERIC MAAR and LINDIANE WESS,
individually and on behalf of others
similarly situated,

   Plaintiffs,

v.

BEALL'S, INC.,

   Defendant.
_____/

## ORDER AND OPINION GRANTING PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY ACTION AND TO AUTHORIZE NOTICE

  THIS CAUSE comes before the Court on named Plaintiffs Eric Maar and Lindiane Wess and opt-in Plaintiffs Jean Saltmarsh and Madia Roberson's (collectively, "Plaintiffs") Motion to Conditionally Certify Action and to Authorize Notice ("Motion"), filed on August 5, 2016. (DE 35). Defendant Beall's, Inc. ("Defendant") filed a Response in opposition on August 19, 2016 (DE 41), to which Plaintiffs replied on August 26, 2016 (DE 42). For the following reasons, the Motion is granted.

## BACKGROUND

  Defendant is a retail chain that does business throughout Florida and in certain other states. (DE 8 at 2). Plaintiffs are former employees of Defendant who were classified as Area Managers ("AM"s) while working at various locations in Florida. (*See* DE 36 Ex. B, D, E; DE 38 Ex. H). The named Plaintiffs filed a Complaint (hereinafter, "Compl.") against Defendant on April 5, 2016, alleging on behalf of themselves and other AMs that Defendant had violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). (Compl. "Introduction").

The violation is purported to arise from Defendant's corporate policy of classifying AMs as exempt salaried employees despite AMs spending the vast majority of their work time performing non-exempt tasks. (Compl. ¶¶ 37-45). Plaintiffs allege that Defendant required AMs to work beyond forty hours per week and did not pay them overtime wages (Compl. ¶ 36), as would otherwise be required under the FLSA, 29 U.S.C. § 207(a). The opt-in Plaintiffs filed consents to join this action on August 2 and 3, 2016 (DE 33 & 34).

Plaintiffs advance several facts that they contend support conditional certification of a collective action: (1) Defendant imposes uniform and explicit company policies that emanate from its headquarters (DE 35 at 3-4, 8-9); (2) Defendants' corporate representatives conceded that the duties of all AMs are designed to be the same and that it has a global policy of classifying AMs as exempt irrespective of their individual circumstances (*id.* at 4-6); (3) those representatives also admitted that all AMs are compensated in the exact same manner (*id.* at 9); (4) Plaintiffs and two non-party declarants (who also worked as AMs) testified at deposition or by affidavit that they spent between 85% and 95% of their time performing non-managerial tasks and had no authority to engage in a number of traditional managerial duties (*id.* at 6-8); and (5) Defendant obligated all AMs to work at least forty-five hours per week, but did not track the hours actually worked (*id.* at 9-10). Defendant does not contest these facts but recasts their significance.

With respect to the scope and form of notice, Plaintiffs request that they be permitted to contact all AMs in Florida (*id.* at 18) by U.S. mail, e-mail, workplace posting, and reminder notices (mid-way through the opt-in period) (*id.* at 20). To facilitate contact, they ask that Defendant be required "to produce in an electronic or computer-readable format the full name, address(es), and e-mail address(es), telephone numbers and social security numbers for each of

the class members." (*Id.* at 20). Also, since they allege that Defendant's violation was willful, Plaintiffs believe that the notice period should extend to the statutory maximum three years prior to the date the cause of action accrued, 29 U.S.C. § 255(a). (*Id.* at 18-19). A proposed notice and consent to join form are attached to the Motion. (DE 38 Ex. J & K). If the collective action were to be certified, Defendant suggests that it be limited to, at most, the stores in which Plaintiffs worked. (DE 41 at 17). In addition, Defendant objects to the proposed notice and requests that the Parties collaborate to draft a mutually-agreeable account of their positions and the law, should the collective action be conditionally certified. (*Id.* at 18).

## LEGAL STANDARD

Section 16(b) of the FLSA permits named plaintiffs to initiate lawsuits on behalf of themselves and "other employees similarly situated." 29 U.S.C. 216(b). In contrast to class actions under Fed. R. Civ. P. 23, unnamed members of the "collective" are not bound by the outcome of the representatives' action unless they affirmatively opt-in through written consent. *Id.*; *Cameron-Grant v. Maxim Healthcare Serv., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003). But without widely disseminated notice of the case, many would-be plaintiffs would not be made aware of the opportunity to opt-in. The Supreme Court created a remedy, allowing district courts, in their discretion, to "facilitat[e] notice to potential plaintiffs" by making their "names and addresses" discoverable and by authorizing the terms of the notice sent. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70, 172 (1989).

At the same time, the provision of such discovery and notice is not automatic. The representative plaintiffs must first demonstrate that other "similarly situated" employees exist and that, were they to be informed of the lawsuit, they would "desire to opt-in." *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (internal quotations omitted). Proof of

3

being similarly situated "is less stringent than that for joinder under Rule 20(a) or for separate trials under Rule 42(b)." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). "Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Id.* (internal quotations omitted). When that showing is made, the collective becomes "certified."

The Eleventh Circuit recommends a two-stage approach for district courts to assess the merits of collective certification. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).[1] At the first stage – commonly called the "notice" or "conditional" stage – the court applies a "fairly lenient standard" to make a tentative decision on whether there is a "reasonable basis" to believe there are other similarly situated employees who would opt-in. *Id.* at 1218, 1219 (quoting *Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). To satisfy their burden, plaintiffs should make "substantial allegations [in their pleadings] of class-wide discrimination . . . supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* at 1219 (quoting *Grayson*, 79 F.3d at 1097). The first determination "typically results in conditional certification." *Id.* at 1218 (internal quotations omitted). Nevertheless, "there must be more than 'only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other stores." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008) (quoting *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)). Once discovery is completed, the defendant may move to "decertif[y]" the collective on the basis of the information exchanged. *Hipp*, 252 F.3d at 1218. On second pass, the court engages in a more fact-intensive inquiry of the similarly-situated issue.

---

[1] *Hipp* was an Age Discrimination in Employment Act (ADEA) case. Because the ADEA borrows the FLSA's opt-in structure, *Hipp*, 252 F.3d at 1216-17, the Eleventh Circuit's discussion of Section 16(b) in that case governs FLSA claims as well.

4

*Id.* Here, plaintiffs "bear[] a heavier burden." *Morgan*, 551 F.3d at 1261. If they survive decertification review, they proceed to trial collectively. *Hipp*, 252 F.3d at 1218. If not, "the opt-in plaintiffs are dismissed without prejudice." *Id.*

## DISCUSSION

### A. Conditional Certification

Defendant opposes certification on two grounds. First, it argues that Plaintiffs have not adduced sufficient evidence of potential members' interest in joining the lawsuit. Second, it urges that Plaintiffs must show not only that Defendant's policy regarding AM duties was misapplied as to the proffered declarants, but also that the policy was systematically misapplied to *all* AMs. I consider each objection in turn.

1. Potential Opt-in Interest

Defendant compares this case with a prior lawsuit by Beall's AMs before Judge Donald L. Graham. *See Hawkins v. Beall's, Inc., et al.*, 10-cv-14226-DLG. Defendant contends that the affidavits introduced here suffer from a defect identified in *Hawkins* – namely, that "all [declarants] filed very similar declarations with conclusory assertions that they anticipate and/or believe that other employees wi[ll] come forward." *Hawkins*, 10-cv-14226-DLG (S.D. Fla. Nov. 16, 2010) (DE 21). Mere "anticipation" of joinder, in Defendant's view, is not enough proof of interest. Moreover, Defendant notes, the total number of Plaintiffs are the same in each case, and there is just one more affidavit in this case than in *Hawkins* (five, compared to four). Plaintiffs respond that they have cured the problem with the *Hawkins* declarations by identifying specific co-workers who would be interested in joining. They also suggest that the prior lawsuit demonstrates persistent dissatisfaction among Defendant's AMs over their compensation.

I am not persuaded by Defendant's reasoning. First, district court opinions are not binding precedent, *Ray v. McCullough Payne & Hann, LLC*, 838 F.3d 1107, 1109 (11th Cir. 2016), and so the outcome in *Hawkins* is not determinative here. Second, and more importantly, in referencing specific co-workers, Plaintiffs' affidavits have gone beyond those offered in *Hawkins* to establish the interest of other potential opt-ins. On the question of outside interest, the Eleventh Circuit has said little more than that "the district court should satisfy itself that there are other employees . . . who desire to 'opt-in' . . . ." *Dybach*, 942 F.2d at 1567. It is true that courts will not be satisfied by a lawyer's bald assertion that additional, anonymous individuals will opt-in if certification is granted. *Haynes*, 696 F.2d at 887. But the situation is very different when an employee, citing his own observations and experiences, isolates the specific colleagues he believes will take advantage of certification. In *Hawkins*, each affidavit simply recited boilerplate language that the declarant "anticipate[d]" "other current and former" AMs would join, given notice, (DE 42-1 at 2, 5, 8), or said nothing at all on the topic (*Id.* at 10-11). Here, all but one declarant AM identified co-workers by name who they know were subject to the same classification policy. Approximately a dozen non-party AMs are cited. Four out of six declarants also asserted that they had conversed with these co-workers about their job duties (Maar Depo. 239:3-5; Roberson Decl. at 4; Cooper Decl. at 3; Salgado Decl. at 3-4). One alleged that these peers had singly, or together, complained to management and each other about the classification. (Roberson Decl. at 4). Another said that he had conveyed the existence of this lawsuit to four colleagues, and two requested more information.[2] (Maar Depo. 238:14-239:5).

Defendant insists that it is insufficient for Plaintiffs and their two non-party declarants to "speculate" on who might join the lawsuit based on their conversations and observations. But it

---

[2] One has since joined this lawsuit as an opt-in (Jean Saltmarsh) and the other is a non-party declarant (Trischa Cooper).

6

cites to no controlling case law for this proposition. There is good reason why the Eleventh Circuit has not adopted Defendant's view. The concept of conditional certification is premised, to a large degree, on speculation. Were plaintiffs able to foresee with one hundred percent certainty which employees would opt-into the collective, there would be no need for them to seek out the names and addresses of other employees. The interested parties would all be solicited and joined without court intervention.[3] But it was precisely because the Supreme Court contemplated reaching out to employees with intentions unknown that it authorized the notice system. *See Hoffman*, 493 U.S. at 170 ("[FLSA] benefits . . . depend on employees receiving accurate and timely notice concerning the pendency of the collective action, *so that they can make informed decisions about whether to participate*.") (emphasis added). That is why courts regularly approve of certification when the evidence of outside interest derives from extrapolation and inference.

For similar reasons, I find that the number of plaintiffs, affidavits, and named potential opt-ins sufficient to support an inference of broader interest. I recognize that there is a wide disparity among district courts as to how many individuals and documents are necessary to demonstrate interest. I have previously certified collectives based on three named plaintiffs plus three opt-ins. *See Butler v. Oak Street Mortg., LLC*, Civ. No. 06-80604, 2006 WL 5519070, at *3 (S.D. Fla. Dec. 22, 2006). Without drawing a bright line, I hold that under *Hipp*'s lenient standard, the testimony of these six declarants permits a reasonable belief that other AMs "desire

---

[3] Several district courts have acknowledged that requiring evidence of other employees' desire to opt-in on a facility-by-facility basis "risks the creation of a Catch-22 wherein Plaintiffs need to identify and notify members of the putative class before seeking a court order to allow for identification and notification." *See, e.g.*, *Williams v. Omainsky*, Civ. No. 15-0123-WS-N, 2016 WL 297718, at *6 (S.D. Ala. Jan. 21, 2016) (internal quotation omitted) (collecting cases).

7

to opt-in" to this lawsuit.[4] And because Plaintiffs' affidavits support the factual allegations detailed in their pleadings, the Court will not resolve at this stage the credibility battle between these and Defendant's opposing affidavits. *Hipp*, 252 F.3d at 1219.

2. <u>Similarly Situated Employees</u>

Separately, Defendant challenges Plaintiffs' showing on the "similarly situated" component of the *Dybach* standard, arguing that they must offer evidence that the as-applied responsibilities of all AMs at all locations deviated from the official list of job duties. I reject this cramped interpretation of the FLSA because it is inconsistent with Eleventh Circuit precedent. Specifically, it prematurely imposes the more exacting second-stage review standard at the permissive first stage.

Both *Grayson* and *Hipp* strongly imply that, at the conditional certification stage, similarly situated plaintiffs are established when plaintiffs (1) allege that there was a "unified policy, plan, or scheme" effecting a "class-wide discrimination", *Hipp*, 252 F.3d at 1219 (quoting *Grayson*, 79 F.3d at 1095, 1097)),[5] and (2) prove that all putative class members "held the same job title" or were otherwise significantly related in status.[6] *Id.* (rejecting, on this basis,

---

[4] There is also merit to Plaintiffs' contention that the reemergence here of the very cause of action at issue in *Hawkins*, initiated by the same type of employees, manifests a continued desire among AMs to address their perceived misclassification.

[5] Indeed, the explicit language in *Grayson* states that the requisite showing can be made based on *less* than "a unified policy, plan, or scheme." *Grayson*, 79 F.3d at 1095. *A fortiori*, a complete and articulated policy is sufficient.

[6] District courts have developed more extensive multifactor tests. Elsewhere, I have cited the following factors: "1) whether the potential class members held the same job title, 2) whether the potential class members worked in the same geographical location, 3) whether the same time period is involved in the alleged violations, 4) whether the same practices and policies were imposed on the potential class members and such practices and policies were established by the same manner and decision maker; and 5) the similarity of the actions which Plaintiffs rely on to establish their claims." *Pomareda v. Homebridge Mortg. Bankers Corp.*, Civ. No. 06-61864, 2007 WL 624331, at *2 (S.D. Fla. Feb. 23, 2007) (citing *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1371 (S.D. Fla. 2003)).

8

employer's argument that "each Plaintiff's case was unique and required an individual analysis of his or her working conditions"). Were there any remaining doubt, the Eleventh Circuit clarified the bifurcated nature of the "similarly situated" inquiry in *Anderson v. Cagle's Inc.*, 488 F.3d 945 (11th Cir. 2007). In affirming a district court's decision to *decertify* a collective, the *Anderson* Court held that "the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions." *Id.* at 953 (internal quotations omitted). At that stage, plaintiffs may not be able to sustain a collective action by relying solely on "allegations and affidavits."[7] *Id.* But the Court stressed that decertification there was "not at odds with either *Grayson* or *Hipp*", *id.* at 954, because those cases evaluated a district court's decision to "*certify[y]* a collective action, not . . . [to] *decertif[y]*" one. *Id.* at 954, n.10 (emphasis in original). Accordingly, *Anderson* stands for the proposition that the fact of a uniform classification policy with respect to a discreet job title may not be enough to get plaintiffs past decertification – but it can get their collective conditionally certified in the first place. A contrary holding, according to which Plaintiffs must gather evidence of the experiences of every member of the putative class before even reaching merits discovery, would eviscerate the established "lenien[cy]" of conditional certification. *Hipp*, 252 F.3d at 1218.

Defendant complains that a relaxed approach to conditional certification would subject "every multi-unit business in America . . . to automatic certification of a company-wide collective action" when an exempt classification is challenged. (DE 41 at 14). Perhaps, but that prospect has not troubled the Eleventh Circuit, which, in responding to this very concern, said

---

[7] In *Morgan v. Family Dollar Stores*, the Eleventh Circuit elaborated on the additional kinds of evidence that plaintiffs in this kind of FLSA case need to marshal in order to survive decertification review. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1263-64 (11th Cir. 2008). It is here, not at conditional certification, that the legal standard more closely resembles Defendant's desired test. *Id.* at 1264, n.46.

9

"[t]here is nothing unfair about litigating a single corporate decision in a single collective action." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008).

In this case, Plaintiffs make factual allegations in the Complaint, supported by deposition testimony and affidavits, that Defendant misclassified AMs because the lion's share of their duties are non-managerial. They offer evidence, which is uncontested (and indeed comes directly from Defendant's agents), that the managerial classification applies uniformly to all AMs and that AMs regularly work over 40 hours per week without receiving overtime pay. On these facts, conditional certification is appropriate. All putative class members hold the same job title – AM; they all work in the same geographic location – Florida; the temporal scope would be same for all AMs – failure to pay overtime within the last three years (see *infra*); Defendant's corporate headquarters devised a single policy – the managerial exemption – that governs all AMs; and all potential plaintiffs would draw on the same actions to establish their claims – their working over 40 hours per week without receiving overtime pay. *See Hipp*, 252 F.3d at 1219; *Pomareda v. Homebridge Mortg. Bankers Corp.*, Civ. No. 06-61864, 2007 WL 624331, at *2 (S.D. Fla. Feb. 23, 2007) (citing *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1371 (S.D. Fla. 2003)) (cataloguing factors to consider for conditional certification). Whether the managerial classification was misapplied systematically, only at isolated locations, or not at all, is an issue to be fleshed out in merits discovery, and if necessary, debated at the decertification stage. *Anderson*, 488 F.3d at 953-54. For these reasons, I find that Plaintiffs adduce sufficient evidence, for the purpose of conditional certification, that they are "similarly situated" to potential class members.[8]

---

[8] I therefore do not reach the merits of Plaintiffs' ancillary grounds for certification.

### B. Scope of the FLSA Collective

1. Temporal Scope

The normal statute of limitations for bringing an FLSA claim is two years after the cause of action accrued. 29 U.S.C. § 255(a). When it is determined that the employer willfully – that is, intentionally or recklessly – disregarded the statute, the limitations period extends back three years. *Id.*; *Allen v. Bd of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1323-24 (11th Cir. 2007). Whether a violation was willful is a "mixed question of law and fact." *Allen*, 495 F.3d at 1324 (citations omitted). Consequently, a final decision of what limitations period applies "must be reserved until it is determined whether a violation of the FLSA occurred." *Id.* That analysis would be premature at this point. For the purpose of notice, the class period may begin three years prior to the date the Complaint was filed (to April 5, 2013).[9]

2. Geographic Scope

Plaintiffs advocate a collective spanning the state of Florida, which is where the overwhelming majority of Defendant's stores are located. Defendant argues that a narrower class, limited to the locations where Plaintiffs worked, is more appropriate. Where it is not disputed that the alleged FLSA violation stems from a company-wide policy, courts have not hesitated to define the collective broadly. *Cf. Hipp*, 252 F.3d at 1219 (district court did not abuse discretion in conditionally certifying collective where plaintiffs "worked in different

---

[9] The class period should not, however, be confused with the date at which claims accrued. The former is a convenient case management device. The latter determines which individual violations are actionable. As to accrual, the Eleventh Circuit subscribes to the "continuing violation" theory, meaning each alleged failure to pay an overtime premium resets the clock for fixing the three year period. *Knight v. Columbus*, 19 F.3d 579, 581-82 (11th Cir. 1994) (relevant inquiry for accrual calculation is whether employees "worked unpaid overtime hours during the statute of limitation window," not when decision to classify employees as exempt was made). The limitations period then runs until an opt-in consent form is filed. *Grayson*, 79 F.3d at 1108 (Section 16(b) statute of limitations tolled by opt-in date, not by date original complaint filed). The question of time-barred claims can be addressed after discovery is conducted.

11

geographical locations" but "all held the same job title"). As discussed, Defendant does not dispute that it implements a global policy of classifying AMs as exempt managers. Plaintiffs have also introduced adequate evidence from which one could reasonably infer that AMs at many stores would desire to opt-into the lawsuit. As a result, the collective will encompass the state of Florida.

### C. *Extent of Employee Information Production*

Plaintiffs' information requests are generally reasonable. However, I do not agree, absent a further showing, that it is necessary for Defendant to disclose AMs' social security numbers or telephone numbers. Therefore, Defendant must produce, by **December 7, 2016**, the full names, street addresses, and e-mail addresses of every employee classified as an AM at a Florida store location since April 5, 2013. The information shall be transmitted to Plaintiffs in an electronic or computer-readable format.

### D. *Form of Notice*

The Court agrees with Defendant that the Parties should cooperate to draft a notice that reflects both sides' positions on the factual and legal issues. The Parties shall submit a joint proposed notice to the Court by **December 7, 2016**. The proposed methods of distribution (U.S. mail, e-mail, workplace posting, and reminder notices mid-way through the opt-in period) are fair and reasonable.

Accordingly, it is **ORDERED** and **ADJUDGED** that

(1) Named Plaintiffs Eric Maar and Lindiane Wess and opt-in Plaintiffs Jean Saltmarsh and Madia Roberson's Motion to Conditionally Certify Action and to Authorize Notice (DE 35) is **GRANTED**. A collective consisting of all of Defendant Beall's,

Inc.'s employees classified as Area Managers at Florida locations since April 5, 2013 is conditionally certified;

(2) Defendant Beall's, Inc. must produce to Plaintiffs, by **December 7, 2016**, the full names, street addresses, and e-mail addresses of every employee classified as an Area Manager at a Florida store location since April 5, 2013. The information shall be transmitted to Plaintiffs in an electronic or computer-readable format; and

(3) The Parties shall submit a joint proposed notice to the Court by **December 7, 2016**.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Florida, this 23 day of November, 2016.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record