**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ERIC MAAR and LINDIANE WESS,
individually and on behalf of others
similarly situated,

        Plaintiffs,

vs.                                                                              Case No.: 2:16-cv-14121-DMM

BEALL'S, INC.,

        Defendant.
_____/

**DEFENDANT BEALL'S, INC.'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

      Plaintiffs move to compel Defendant to disclose privileged information and material or else withdraw certain of its well-supported defenses to this action. Plaintiffs' motion should be denied because Defendant has not placed the privileged information at issue and there is no basis for a finding of waiver. Defendant submits the following memorandum of law in opposition to Plaintiff's motion.

**MEMORANDUM OF LAW**

**I.**    **Introduction**

      In this lawsuit, Plaintiffs, former Area Managers for Beall's, challenge their exempt status under the Fair Labor Standards Act ("FLSA") in a bid to collect additional compensation from Defendant, their former employer. [ECF No. 1]. Defendant maintains Plaintiffs were properly classified and paid pursuant to the letter of the FLSA, and Defendant has asserted several defenses to Plaintiffs' claims, including a defense that Plaintiffs have failed to state a claim that Defendant's actions were "willful" and a defense that Defendant has at all times acted in good faith and with reasonable grounds for believing its actions complied with the applicable

law.  [ECF No. 8].

Defendant has disclosed a good deal of evidence supporting its defenses, including the testimony of its corporate representative, Daniel Doyle.  See Deposition Transcript of Daniel J. Doyle (referred to herein as [Doyle Tr. ___:___]), attached hereto as Exhibit 1.  Doyle provided concrete examples of the ways in which Defendant has made good faith attempts to abide by the FLSA with respect to the classification of Defendant's Area Manageres, without reliance on or reference to communications with the undersigned legal counsel.

Nonetheless, Plaintiffs seek production of any communications between Defendant and its undersigned counsel with regard to the classification of Area Managers.   Plaintiffs contend that Defendant has waived its attorney-client privilege by alleging "good faith" defenses, thereby allegedly placing its "state of mind" at issue.

In the alternative, Plaintiffs claim Defendant should withdraw, or the Court should strike, Defendant's defenses, despite the fact that those defenses are supported by facts that are independent of any attorney-client communication.

Plaintiffs' motion should be denied.  First, Plaintiffs do not attempt to attack Defendant's assertion of work-product protection as to advice given since it became clear that litigation was imminent.  Second, Plaintiffs have failed to establish that Defendant has waived the attorney-client privilege by placing the advice of the undersigned counsel at issue.  Defendant has not attempted to rely on the advice of counsel as a sword to escape liability while also claiming the shield of privilege.  And Defendant has made clear that in attempting to establish a Section 260 defense, it does not seek to rely on any advice provided by the undersigned counsel.  On the other hand, it has provided full disclosure of all of the facts that it does rely on to support its defenses.   Finally, Defendant has properly disclosed its privileged communications and material

on a privilege log, as Plaintiffs acknowledge.

Plaintiffs' counterarguments go too far. Under their theory, the assertion of any defense that could possibly be impeached by the use of protected communications would justify the destruction of the attorney-client privilege. Particularly where subjects as complex as FLSA exemptions are at issue, parties must be able to seek legal advice free from concern that their communications with counsel must be disclosed in subsequent litigation. Plaintiffs' argument that a wholesale waiver of privilege results from any attempt to assert a "good faith" defense is misplaced and contrary to the great weight of the law.

## II.   Legal Argument

### A.   Plaintiffs have not argued for a waiver of work-product protection.

In evaluating Plaintiffs' motion, it is clear that Plaintiffs have not argued for a waiver of the protection provided by work-product privilege. The Eleventh Circuit has made clear that opinion work-product deserves the highest level of protection. Under no circumstances should the Court require production of materials that reflect the undersigned counsel's mental impressions of this case. Thus, any communications between Defendant and the undersigned counsel that took place after Defendant reasonably anticipated the onset of this litigation are not at issue.

### B.   Plaintiffs have not demonstrated a basis for the Court to override Defendant's assertion of attorney-client privilege.

#### 1.   The attorney-client privilege serves an important interest in the justice system.

The attorney-client privilege exists "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 393 (1981). "The

privilege is, in this regard, absolutely essential to our representational system." In re Grand Jury Matter No. 91-01386, 969 F.2d 995, 997 (11th Cir. 1992).

The Eleventh Circuit has observed that waiver of the attorney-client privilege by implication "reflects the position that the attorney-client privilege was intended as a shield, not a sword." Cox v. Adminstr. U.S. Steel & Carnegie, 17 F.3d 1386, 1417 (11th Cir. 1994), opinion modified on reh'g, 30 F.3d 1347 (11th Cir. 1994) (internal citations omitted).  A privilege waiver may be found (1) when a client testifies concerning portions of the attorney-client communication, (2) when a client places the attorney-client relationship directly at issue, and (3) when a client asserts reliance on an attorney's advice as an element of a claim or defense." Id. at 1418 (internal citations omitted).  None of those circumstances are present in this case, and therefore, no waiver has occurred.

> **2. Defendant is not claiming attorney-client privilege for communications from Ellen Kearns to Doyle, as the Defendant has provided that communication.  However, Plaintiffs agreed that they would not claim a waiver of privilege as to communications with the undersigned counsel based on Defendant's production of the Kearns letter.**

In addressing Plaintiffs' claims, it is important to understand where the privilege is being asserted and where it is not.  Defendant allowed its corporate representative to answer limited questions related to advice provided by a different law firm regarding case law relevant to the classification of Area Managers.  The attorney who provided this advice, Ellen Kearns, was employed by Epstein Becker & Green.  She has never practiced with the undersigned's law firm.  She was originally listed on Defendant's privilege log as the author of a letter, dated June 2004, which she had prepared and sent to Defendant, and which concerned the potential classification of Area Managers.[1]  When Doyle testified in deposition that he had relied in part on the Kearns

---

[1] As Doyle testified, Kearns concluded that Defendant's classification of Area Managers was appropriate.  [Doyle

4

letter in determining the proper classification of Area Managers, Defendant's counsel and Plaintiffs' counsel agreed that Defendant would produce the letter from Kearns to Defendant, dated June 2004, in exchange for Plaintiffs' agreement that the Kearns letter would not in any way be the basis for a motion to compel as to a privilege waiver. [See conversation of counsel recorded on Doyle Tr. at pp. 77:4-78:6; 79:24-80:2].

In preparing this response, the undersigned discovered that the Kearns letter hat not been produced to Plaintiffs after the Doyle deposition. The undersigned has rectified that oversight and produced the Kearns letter to counsel for Plaintiffs. Pursuant to the agreement reached by counsel at the deposition though, the production of this letter should not be given any weight in determining whether Defendant has waived attorney-client privilege as to communications between Defendant and the undersigned's law firm.

### 3.     Defendant has not placed its communications with the undersigned's law firm directly at issue in the litigation.

As to communications between Defendant and the undersigned's law firm prior to the onset of litigation, Defendant has not undertaken any affirmative act that would put these privileged communications at issue.

Going back to the Cox test, it is clear that neither element one nor element three of that test have been satisfied. Doyle has not testified about any communications between Defendant and attorneys from the undersigned's firm. Nor has he testified that he relied on advice from Thompson, Sizemore, Gonzalez & Hearing in determining the exempt status of Area Managers. Thus, Plaintiffs are left with attempting to proceed under the second element, which required them to show that Defendant has placed any advice received from Thompson, Sizemore, Gonzalez & Hearing *directly at issue*.

---

Tr. 79:18-20].

Here, Defendant has raised two defenses that Plaintiffs claim warrant a privilege waiver. As its third defense, Defendant pleaded that Plaintiffs' Complaint fails to state a cause of action upon which relief may be granted because Plaintiffs fail to plead sufficient facts to show that any alleged failure to pay overtime compensation or other wages was "willful." This defense goes to Plaintiffs' inability to plead and prove the claim they have asserted. It is the equivalent of a general denial and it does not raise any new issues in the case, as Plaintiffs bear the burden of establishing that any violation by Defendant was willful in nature. Denying that Plaintiffs can accomplish this does not put Defendant's communications with its attorneys directly at issue.

For its fifth defense, Defendant pleaded that it "at all times acted in good faith and with reasonable grounds for believing its actions fully complied with the law, and thus any liability on its part for liquidated damages should be limited in accordance with 29 U.S.C. § 260." If established, this defense would defeat Plaintiffs' claimed entitlement to liquidated damages on the grounds that Defendant made good faith efforts to comply with the law. While this defense is affirmative in nature, it does not automatically place Defendant's protected communications with its attorneys at issue.

Pleading a good faith defense is not the same as pleading an advice-of-counsel defense. A defendant can establish good faith through many actions that are independent of the advice of counsel. In this case, the corporate representative, Daniel Doyle, who serves as Vice President and Chief Human Resources Officer for Defendant, maintained throughout his deposition that the classification decision for Area Managers was based on observation of Area Managers, consultation internally with Defendant's managerial and operations personnel, and knowledge of

the law learned through personal review of literature and attendance at seminars and presentations on the subject.

For example, Doyle testified that Defendant considered the following factors when deciding to maintain Area Managers as exempt employees for purposes of the FLSA (which goes to Defendant's good faith defense): "the amount of time, what their primary duties are, how much time they're spending on managerial duties, amount of freedom, discretion, decision-making, and what the compensation level was." [Doyle Tr. 30:4-10]. And in further explanation of Defendant's decision-making process (which again, goes to the good faith defenses), Doyle testified that the personnel who were involved in making the decision to classify Area Managers as exempt attended "many labor law seminars and meetings" to learn about the subject. [Doyle Tr. 69:12-21]. In fact, Doyle testified that he had attended such a seminar that was presented by the National Retail Federation as recently as March of 2016. [Doyle Tr. 87:25-88:4].

When asked what documents were reviewed in making the classification determination, Doyle responded that he and another Human Resources employee reviewed articles, attended conferences, and reviewed the law themselves. [Doyle Tr. 30:11-19]. In addition, they conferred with other employees at the managerial and store operations level, who directly observed the work of Area Managers, and they also personally observed Area Managers themselves. [Doyle Tr. 30:20-32:7; 39:16-22; 66:13-20; 70:3-16]. And when directly asked about whether he had spoken with any attorneys at the particular juncture in 2012 when Defendant was deciding to maintain its classification of Area Managers as exempt employees, Doyle responded "no[,]" [Doyle Tr. 34:7-36:6], and further testified that he was prompted to reexamine the classification at that particular juncture because of the litigation he personally heard about in the media and while attending conferences. [Doyle Tr. 42:23-43:8].

Doyle also testified that after a previous lawsuit involving an Area Manager challenging the exemption, Defendant's executives reviewed the law again and concluded that the job was properly classified. [Doyle Tr. 64:8-15]. That lawsuit also prompted Doyle to "[seek] out lots of material relative to the subject [of the FLSA exemptions]," and he review a Department of Labor opinion letter on the topic. [Doyle Tr. 64:16-65:9]. Doyle reiterated at the end of his deposition that he had personally reviewed the executive exemption and administrative exemption set out by the Department of Labor "many times." [Doyle Tr. 68:13-22]. All of this testimony supports Defendant's good faith defenses, and does not refer to or rely on communications with legal counsel which could constitute putting privileged communications at issue. Because Defendant is not using any advice received from Thompson, Sizemore, Gonzalez & Hearing to support its good-faith defense, it has not placed that advice directly at issue.

### 4. Plaintiff's attempt to rely on an inadvertent error in an interrogatory response is not sufficient to support a finding of waiver.

Plaintiffs attempt to skirt the fact that Defendant has not relied on any advice received from Thompson, Sizemore, Gonzalez & Hearing by claiming that Defendant's answer to Interrogatory No. 10 warrants a privilege waiver. That interrogatory asked Defendant, in part, to describe and identify all facts supporting each of Defendant's defenses. The answer originally served by Defendant contained a reference to "consultation with legal counsel." This answer was the result of a drafting error. As soon as the undersigned learned that this verbiage had been inadvertently included, he directed that an amended version of the answer be served.[2] [ECF No. 54-4]. The amended answer no longer asserts consultation with counsel. Because this inadvertent error was corrected on a timely basis as soon as the undersigned became aware of it, it cannot be asserted as evidence of waiver under Federal Rule of Evidence 502.

---

[2] This was before Defendant's consultation with Epstein Becker & Green became known to the undersigned.

### 5. The mere fact that the good faith defense arguably involves Defendant's state of mind does not compel a finding of waiver.

Plaintiffs generally cite to instances where the privilege was deemed to be waived because a defendant had placed its state of mind at issue with respect to "good faith" defenses. But the application of the attorney–client privilege is determined on case–by–case basis. Upjohn, 449 U.S. at 396. Furthermore, the Third Circuit has noted that orders finding a privilege waiver purely because a client's state of mind may be at issue are of "dubious validity." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir. 1994).

In this case, it is clear from the record evidence that Defendant has not impliedly waived its privilege by asserting defenses grounded on good faith attempts to comply with the law, and has not made any privileged communication relevant to the case (to the extent that a standard of relevance is considered). Instead, Defendant's corporate representative was able to list a litany of ways—besides seeking legal counsel—that Defendant made good faith attempts to comply with the law with respect to the subject matter of this suit, and did not revert to reliance on communications with legal counsel. See supra.

Plaintiffs cite and largely rely on an order from a district court in New York which stated that, under the law of the Second Circuit Court of Appeals, "if (1) a defendant claims the defense of good faith, and (2) that claim can only be scrutinized by examining the disputed communications, then that defendant has waived the privilege." Scott v. Chipotle Mexican Grill, Inc., 67 F. Supp. 3d 607, 611 (S.D.N.Y. 2014). Taking further liberty with the Second Circuit case law, the Chipotle court went further and extended the privilege waiver doctrine by holding that waiver may apply "as a matter of fairness" even where a defendant claims to have ignored the advice of counsel, based on a theory that a plaintiff is entitled to know whether a defendant ignored its counsel's advice. Id.

This logic ignores the Third Circuit's holding in Rhone-Poulenc that the mere existence of a state-of-mind issue is almost never enough, standing alone, to justify finding a waiver. Moreover, it threatens the sanctity of the oldest common law privilege, which has been developed through decades of jurisprudence and is based on sound public policy ideals. If, as Plaintiffs contend, they are entitled to know whether any defendant who asserts a defense of good faith compliance attempts has ever ignored an attorney's advice on the subject, then Plaintiffs would always be entitled to know the substance of attorney-client communications, because the only way to determine the sought-after evidence about whether the defendant followed or did not follow legal advice would be to review the privileged communications.

Further, Plaintiffs' argument is flawed because it ignores the possibility that a defendant may have grounds *other than* reliance on an attorney's advice to support good faith defenses, and does not intend to use the defense as a sword and a shield, as is the case here. See, e.g., Crawford v. Coram Fire Dist., 12 CV 3850 DRH WDW, 2014 WL 1686203, at *6 (E.D.N.Y. Apr. 29, 2014) (a defendant's assertion of a separate basis for its allegedly unlawful actions which does not rely on the advice of counsel as providing a good faith basis for the actions can support a finding that the attorney-client privilege has not been waived). As Plaintiffs would have it though, a defendant is effectively faced with a choice of withdrawing its well-supported defenses, or having its own lawyer become a witness in the lawsuit. This result certainly does not serve the interests of justice or further the purpose of the privilege.

In the Chipotle case, the corporate representative testified that he had consulted with attorneys in making the classification decision. That corporate representative also testified that he had no recollection of consulting with anyone at Chipotle regarding the classification outside the presence of legal counsel. Id. At 614-15.

That is most definitely not the situation here, as Defendant testified at length about the *internal* conferences held between Defendant's personnel *only* regarding Defendant's classification decision. See supra. This case is actually much more akin to McKee v. PetSmart, Inc., 71 F. Supp. 3d 439 (D. Del. 2014), which was also a claim brought under the FLSA challenging a company's exemption of certain employees for purposes of overtime. After close examination of the corporate representative's deposition testimony in that case, which the court found preserved the privilege, the McKee court concluded that there was no implied waiver because PetSmart did not rely on privileged communication to support its good faith defense. The court clarified that "[w]hile the attorney's advice may be relevant to the matters in issue, the privilege applies as the interests it is intended to protect are still served by confidentiality." McKee, 71 F. Supp. 3d at 442 (internal quotation omitted).

The McKee court took particular note of deposition testimony that PetSmart provided in response to a question about what supported its defense that any FLSA violation was not willful. The PetSmart witness responded that due diligence had been done – in the form of "interviews and information with the leadership of operations, the field leadership, store managers, perhaps talks with other operations managers." Id. (internal quotation and formatting omitted). The PetSmart witness further provided that his knowledge was based on personal observations and interactions with store operations personnel regarding the duties of the employees at issue. Id.

Based on this testimony, the court stated that "Plaintiffs' unsuccessful attempts to draw a waiver from [the corporate representative], which were repeatedly resisted by defendant via its counsel's instructions, are not a basis for the court to abrogate the privilege." Id.

Plaintiffs do not need to examine Defendant's privileged communications to establish their case, because Plaintiffs have the opportunity, through the discovery process, to test the

11

multitude of other bases for Defendant's good faith defenses which Defendant's corporate representative has described.  In McKee, the court noted that privileged communications were in fact *not* the only way for plaintiffs to assess the truth of PetSmart's defense.  There, the witness had testified that he "visited stores and held discussions with store operations, human resources, legal, finance, and field operations to gain an understanding of the duties performed by operations managers."  McKee, 71 F. Supp. 3d at 443.  That testimony is strikingly similar to the testimony Defendant has provided in this case, which, just as the McKee court suggested, can be verified by Plaintiffs here without the need for Defendant to disclosed privileged information.

While the McKee plaintiffs argued that disclosure of privileged communications were vital to their case on the issue of willfulness, just as the Plaintiffs do here, the court opined that "relevance is not the standard for waiver of the privilege even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." Id. Nor can a privilege waiver be sustained merely upon speculation by Plaintiffs that the advice given by Defendant's counsel might provide them with material to cross-examine or impeach Defendant's witnesses.  Chick-fil-A v. ExxonMobil Corp., 08-61422-CIV, 2009 WL 3763032, at *8 (S.D. Fla. Nov. 10, 2009) ("[A] court cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant.") (internal citation omitted).

Finally, the Eleventh Circuit has opined that "courts generally have not found a waiver where the party attacking the privilege has not been prejudiced." Cox v. Adminstr. U.S. Steel & Carnegie, 17 F.3d 1386, 1417.  Plaintiffs have made no showing that prejudice would exist here.  While they state in a conclusory manner that they "will be hindered in their ability to establish their entitlement to a three year statute of limitations period, or to counter Defendant's argument

against liquidated damages[,]" they do not explain why they could not test the *actual bases* for Defendant's good faith defenses that have been articulated for them—at length—through the course of discovery.

>   **C.   Disclosure of privileged information to Plaintiffs is not necessary in consideration of any potential future motion for decertification by Defendant, and Defendant's decision to reclassify Area Managers is irrelevant to the present dispute.**

Plaintiffs contend that Defendants should be required to disclose privileged information in anticipation of the deadline for *Defendant* to move to decertify the collective, on the tenuous theory that Defendant's alleged uniform treatment of the putative class will be at issue in decertification briefing, somehow entitling Plaintiffs to review Defendant's privileged communications.  This argument is a red herring, and fails for the same reasons Plaintiffs' arguments that the privileged information is relevant to the case fail—Defendant has not put the privileged information at issue and has not relied on it to support a claim or defense.  As Doyle explained, the Area Manager job was designed to be an exempt position and is an exempt if performed as designed; isolated failures to perform the job as intended however do not affect the original conclusion on the classification of the position.  [Doyle Tr. 45:14-23].  If Plaintiffs' logic were followed, it would utterly destroy the ability of employers to seek advice on the proper classification of employees if the mere question of whether a classification can be uniform to a positon would waive privilege as to that issue every time it was broached.

Moreover, decertification is not being argued at this juncture, and the parties have not even engaged in second-tier discovery.  Doyle's testimony makes clear that any "uniform decisions" with respect to the classification of Area Managers were based on considerations other than communications with legal counsel, and Plaintiffs are welcome to conduct discovery into those other considerations (and in fact, they already have).

13

Similarly, Plaintiffs' claims that Defendant's decision to reclassify Area Managers recently is irrelevant to this case and to the present motion. The decision affects this case only insofar as it determines the appropriate dates that are relevant for the putative class members' employment. And Defendant's decisions to reclassify certain employees may have been (and in this case was) due to proposed revisions to the FLSA regulations by the Department of Labor, which were set to take effect while this lawsuit was still pending. It is improper for Plaintiffs to assert that a business decision by Defendant made because of a proposed revision to the law and while the lawsuit was pending, and which has nothing to do Plaintiffs or the specific facts of this case, somehow renders Plaintiffs entitled to review privileged communications related to that decision, or any other topic.

**D.     Any disclosure that is compelled should be limited in scope.**

Should any disclosure of privileged information be compelled, the scope of the information to be disclosed should be appropriately limited. Here, to the extent Defendant has privileged information related to its good faith compliance with the FLSA as to its classification of Area Managers which supports its affirmative defenses, the scope of any waiver will be very narrow. Any privileged information related to Defendant's subsequent reclassification of Area Managers after this lawsuit was filed would be well outside the bounds of the information that could be compulsorily disclosed.

**III.    Conclusion**

Plaintiffs are not entitled to any of Defendant's privileged communications or material, and no further discovery should be compelled as to the Requests Numbered 17, 24, and 25, or as to deposition of Doyle (to the extent any questions sought privileged information). Defendant's good faith defenses did not inject any privileged information into the case, and Defendant has

abundantly provided evidence that supports its defenses and which shows the privilege has not been compromised. Furthermore, there has been no showing of prejudice to the Plaintiffs by Defendant's protection of its privilege. As a result, Plaintiffs' motion should be denied.

Respectfully submitted this 13th day of January, 2017.

>/s/ Kevin D. Johnson
Kevin D. Johnson
Florida Bar No.: 0013749
Bridget E. McNamee
Florida Bar No.: 0096460
Thompson, Sizemore, Gonzalez, & Hearing, P.A.
201 N. Franklin St., Suite 1600
Tampa, FL 33602
Tel: 813-273-0050
Fax: 813-273-0072
Email: kjohnson@tsghlaw.com
bmcnamee@tsghlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of January, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys and parties of record.

>/s/ Kevin D. Johnson
Attorney