UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 16-cv-14121-MIDDLEBROOKS/LYNCH

ERIC MAAR and LINDIANE WESS,
individually and on behalf of others
similarly situated,

      Plaintiffs,

v.

BEALL'S, INC.,

      Defendant.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL REQUESTS FOR PRODUCTION OF DOCUMENTS NOS. 17, 24, & 25 AND DEPOSITION TESTIMONY

THIS CAUSE comes before the Court upon Plaintiffs Eric Maar and Lindiane Wess's (together with all opt-in Plaintiffs) ("Plaintiffs") Motion to Compel Requests for Production of Documents Nos. 17, 24, & 25 and Deposition Testimony ("Motion"), filed on December 23, 2016. (DE 54). Defendant Beall's, Inc. ("Beall's") filed a Response in opposition on January 13, 2017 (DE 57), to which Plaintiffs replied on January 27, 2017 (DE 63). For the reasons stated below, the Motion is granted.

## BACKGROUND

This is a collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), by employees of Beall's that were classified as Area Managers ("AMs"). (DE 1 at ¶ 24). Plaintiffs' Complaint alleges that Beall's violated the FLSA by failing to pay overtime wage to AMs (*id.* at ¶ 31), whom Beall's had misclassified as "exempt" – employees for whom the statutory overtime requirements do not apply. (*Id.* at ¶¶ 37-45). The Complaint alleges further that Beall's misclassification, and consequent overtime violation, was "willful."

(*Id.* at ¶¶ 46, 56-57). Beall's Answer denies that the company erred in its AM classification (DE 8 at 5), but the Third and Fifth Affirmative Defenses also stress that if it did, any such error was, respectively, not willful and made in a good faith attempt to comply with the law. (*Id.* at 8). Whether Beall's classification of AMs as exempt employees was willful is a material "question of law and fact", *Allen v. Bd of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1324 (11th Cir. 2007), because the running of the statute of limitations and availability of liquidated damages both turn on the state of mind of Beall's officials. *See* 29 U.S.C. §§ 255(a), 260.

On May 27, 2016, Plaintiffs served Interrogatories and Requests for Production of Documents ("RFPs") on Beall's. (DE 54 at 2). In Interrogatory No. 10, Plaintiffs requested Beall's to:

> Describe and identify all facts supporting each of Defendant's Affirmative Defenses, including for each defense upon which you rely, identifying (a) the records and documents relied upon; and (b) all witnesses with knowledge of the facts underlying each exemption.

(DE 54-1 at 9). Correspondingly, Request No. 24 of the RFP asked for "[d]ocuments or records relied upon as a basis for responding the Plaintiffs' First Set of Interrogatories to Defendant." (DE 54-2 at 11). Request No. 25 asked more specifically for "all documents supporting any affirmative defenses relied upon by Defendant . . . ." (*Id.* at 12). In a more encompassing question, Request No. 17, Plaintiffs also requested "Defendant's communications with others regarding this lawsuit or the subject matter of this action." (*Id.* at 9).

In response to Interrogatory No. 10, as to the Third Affirmative Defenses, Beall's stated, in pertinent part, that:

> If a Court should find that Plaintiffs were misclassified, Plaintiffs have not presented and cannot present any evidence that demonstrates Defendant's actions were willful, because Defendant made good faith efforts to properly classify its employees according to the duties for which they were responsible and the significance of those duties.

2

(DE 54-1 at 10, 11). As to the Fifth Defense, Beall's repeated the same answer but added at the end of the sentence that Beall's *"consulted with legal counsel regarding such classification."* (*Id.* at 11) (emphasis added).[1] In addition, Beall's objected to Document Requests Nos. 17 and 24, in part, because they "seek[] documents protected by the attorney-client and/or work product privileges." (DE 54-2 at 9, 11). Beall's objected to Document Request No. 25 on the ground that a request for "all" documents was "overly broad." (*Id.* at 12).[2]

According to Plaintiffs, after they communicated with Beall's regarding the company's objections, Beall's served amended answers to the interrogatories, which substituted the reference to the advice of legal counsel with the following:

> . . . Defendant regularly reviewed and evaluated the job descriptions of [AMs] and the work performed by [AMs], reviewed the relevant regulations and regulatory guidance, partook in relevant educational events and seminars for Human Resources professionals regarding wage and hour laws, and reviewed relevant trade publications on the issue.

(DE 54-4 at 13). Finally, as is relevant to this Motion, on July 14, 2016, Plaintiffs deposed Daniel Doyle ("Doyle"), Beall's corporate representative. (DE 54 at 7). During the deposition, Doyle confirmed that Beall's had retained an attorney, Ellen Kearns ("Kearns"), between 2004 and 2005 to examine the exempt status of AMs, and that Kearns had written a letter describing her conclusions. (DE 54-7 at 50). However, Beall's counsel directed Doyle not to answer questions concerning the letter's application to classification policies or Doyle's communications with present counsel regarding AMs' classification. (*Id.* at 51-52).

---

[1] On July 6, 2016, Beall's served Amended Answers and Objections, which, with regard to the factual support for the Third and Fifth Affirmative Defenses, were identical to the previous iteration. (DE 54-3 at 11-12).
[2] Beall's submitted a privilege log which indicates that there are documents responsive to Plaintiffs' requests but which are designated as protected by the attorney-client privilege. (DE 54-6).

In the instant Motion, Plaintiffs request that Beall's be compelled to produce documents responsive to the three RFPs at issue (Nos. 17, 24, & 25) and to re-produce Doyle to testify concerning "all aspects of [Beall's] affirmative defenses of good faith and lack of willfulness, including all communications with [] Kearns or any other counsel." (DE 54 at 9).

## DISCUSSION

There is one material point in dispute: whether Beall's impliedly waived the attorney-client privilege by putting its state of mind directly at issue.[3] The Eleventh Circuit's standard for evaluating this form of waiver is found in *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1417-20 (11th Cir. 1994). That decision examined whether, in a suit by union members, a defendant employer waived the privilege when it raised an affirmative defense that it did not believe an agreement to specially compensate union negotiators was illegal. *Id.* In holding that the employer had waived the privilege, the *Cox* Court adopted the principle enunciated by the Fifth Circuit that "the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information *would be manifestly unfair* to the opposing party." *Cox*, 17 F.3d 1386, 1417 (quoting *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989)) (emphasis in original); *accord United States v. Bilzerian*, 926 F.2d 1285, 1292-94 (2d Cir. 1991) (finding that defendant's testimony about his understanding of his action's legality,

---

[3] I need not address Beall's argument regarding the work product doctrine at length. Beall's argues that it has asserted, though Plaintiffs have not taken into account, that the documents at issue are covered by said doctrine. But as Plaintiffs correctly note in Reply, Beall's privilege log asserts only the attorney-client privilege as the basis for not disclosing "[d]ocuments and correspondence" related to the company's "[e]fforts . . . to interpret U.S. Department of Labor guidance and adhere to all federal and state wage and hour laws and regulations" – i.e., the subject of the present dispute. (DE 54-6 at 3). I also do not reach the question of whether the contents of a party's original interrogatory response, which was subsequently amended, may be offered as evidence by the adverse party in a motion to compel discovery.

4

based on otherwise privileged conversations with counsel, was probative of criminal intent, a material issue, and therefore made conversations discoverable through cross-examination); *Chevron Corp. v. Penzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992) (holding that defendant could not cite reasonableness of its attorney's advice on tax implications of investment to defeat plaintiff's securities claim while invoking attorney-client privilege to deny plaintiff access to content of that advice).[4]  In such instances, the client impermissibly uses the privilege as a "sword" rather than a "shield," as was intended. *Cox*, 17 F.3d at 1417. *Cox* went on to cite with approval the Eighth Circuit's list of possible situations where a litigant uses the privilege offensively: "(1) when a client testifies concerning portions of the attorney-client communication, (2) when a client places the attorney-client relationship directly at issue, and (3) when a client asserts reliance on an attorney's advice as an element of a claim or defense." *Id.* at 1418 (quoting *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982))

Plaintiffs contend that Beall's implicated the attorney-client relationship when it asserted the affirmative defense of good faith. In their view, such a defense "necessarily involves an inquiry into the state of mind which typically calls forth the implied waiver of attorney-client privilege," regardless of any reference to advice of counsel. (DE 54 at 11) (quoting *In re Cty. of Erie*, 546 F.3d 222, 228-29 (2d Cir. 2008)). Beall's insists that the mere fact of having pled a good faith defense cannot, by itself, constitute a waiver.

A comparison between this case and *Cox* demonstrates that the substance of Beall's Fifth Affirmative Defense indeed translates to a standalone waiver of attorney-client privilege as to the

---

[4] I am unaware of any court of appeals decision addressing whether the implied waiver doctrine applies to good faith defenses in the FLSA context. A case nearly identical to the instant dispute came before the Fifth Circuit, but the Court avoided the issue, instead ruling on the narrower grounds that defendant had impliedly waived the privilege by failing to timely assert it. *Nguyen v. Excel Corp.*, 197 F.3d 200, 205-06 (5th Cir. 1999).

information sought by Plaintiffs. The *Cox* Court stressed that the source of the waiver must be an "affirmative act." *Cox*, 17 F.3d at 1419 (citing *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987) ("To waive the attorney-client privilege . . . a defendant must do more than merely deny a plaintiff's allegations")). The employer defendant in that case, USX, maintained that its affirmative defense did not qualify because it was merely a response to the plaintiff's injection of "state of mind" issues via the complaint's "allegations of intentional, criminal wrongdoing." *Cox*, 17 F.3d at 1418. But the Eleventh Circuit, analogizing to *Bilzerian*, rejected this reasoning and found that USX had "gone beyond mere denial" of criminal intent – and thereby waived the privilege – when it asserted by way of affirmative defense "that it believed that its change in pension fund policy was legal." *Id.*[5] Admittedly, in this case, Beall's Third Affirmative Defense stands as a mere negation of the willfulness charge at issue. (*See* DE 8 at 8). But, as in *Cox*, the Fifth Affirmative Defense introduces the company's subjective weighing of legality when it stated that "Defendant at all times acted in good faith and *with*

---

[5] District courts applying *Cox* in this Circuit generally agree that a party's insistence on its good faith belief in its actions' legality activates a waiver of the attorney-client privilege. *See United States v. Fresenius Med. Care Holdings, Inc.*, No. 1:10-cv-1614-AT, 2014 WL 11517840, at *2 (N.D. Ga. Feb. 21, 2014) (defendant's "affirmative reliance on its belief during all relevant times that its conduct was legal is thus sufficient to waive the attorney-client privilege"); *Barker ex rel. United States v. Columbus Reg'l Healthcare Sys., Inc.*, No. 4:12-cv-108-CDL, 2014 WL 4287744, at *4 (M.D. Ga. Aug. 29, 2014) (defendant's "plan" to "explain fully why its conduct was not knowingly and intentionally unlawful" steps over the line from "mere denial" to affirmative act relying on privileged information and therefore constitutes waiver); *but see Butterworth v. Laboratory Corp. of Am. Holdings*, No. 3:08-cv-J-34JRK, 2010 WL 11470895, at *5-6 (M.D. Fla. Dec. 2, 2010) (finding that defendant's assertion of two affirmative defenses insisting on its good faith belief in the legality of its actions did not waive the privilege). As Plaintiffs point out, a number of district courts outside of the Eleventh Circuit, some in the FLSA context, have also come to the same conclusion.

*reasonable grounds for believing its actions fully complied with the law.*" (*Id.*) (emphasis added).[6]

Beall's citation to *Rhone-Poulenc v. Home Indemnity*, 32 F.3d 851 (3d Cir. 1994), is unavailing. In that case, the Third Circuit held that plaintiff insureds did not put confidential communications with their attorneys at issue merely by filing a lawsuit against their insurers. *Rhone-Poulenc*, 32 F.3d at 864. The Third Circuit held that even though the insured clients' knowledge, prior to obtaining coverage, about the effects of their medical products was a relevant issue, the act of filing a lawsuit in which confidential legal communications concerning those products became relevant was not enough to place those exchanges "at issue." *Id.* That holding is not in conflict with *Cox*, as the *Rhone-Poulenc* Court determined that the plaintiffs' complaint had "not interjected the advice of counsel as an *element of a claim* in this case." *Id.* (emphasis added). Both circuits therefore agree that relevance alone is not the litmus test for waiver. It is the articulation of a claim or defense explicitly *relying* on the litigant's subjective thinking, as potentially influenced by advice from legal counsel, that activates the doctrine of implied waiver. Accordingly, Beall's waived its attorney-client privilege with respect to the documents in question by setting forth an affirmative defense that invoked its good faith belief in the legality of its employee classification.

Beall's warns that a ruling in favor of Plaintiffs raises the specter of plaintiffs receiving automatic access to the substance of an attorney's advice to her clients when a party asserts a good faith defense. But Beall's dire pronouncement need not come to fruition because it is within the power of the holder of the privilege to make or omit a waiving statement. As *Cox*

---

[6] The *Cox* Court observed that "[t]he defendant need not raise an affirmative defense to inject a new issue into the case, although it frequently occurs that way." *Cox*, 17 F.3d at 1419. This is further proof that the Eleventh Circuit anticipated that waiver might be found solely by examining the face of the pleadings.

7

noted, a defendant can always deny the element of a plaintiff's claim alleging a certain mental state "without affirmatively asserting" a good faith belief in an act's legality. *Cox*, 17 F.3d at 1419.

Accordingly, it is **ORDERED** and **ADJUDGED** that Plaintiffs Eric Maar and Lindiane Wess's Motion to Compel Requests for Production of Documents Nos. 17, 24, & 25 and Deposition Testimony (DE 54) is **GRANTED**. Defendant Beall's, Inc. shall, **by March 13, 2017**, produce the documents responsive to Request Nos. Nos. 17, 24, & 25, including those identified on the third entry of its privilege log. By the same date, Beall's shall re-produce Daniel Doyle for deposition concerning the substance of advice the company received from legal counsel as to the classification of Area Managers.[7]

**SO ORDERED** in Chambers at West Palm Beach, Florida, this 27 day of February, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record

---

[7] However, I grant Beall's request to exempt any documents or testimony concerning reclassifications enacted after this action was initiated.